**Ronald J. LaVIGNE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2494.**

Court of Appeals of Alaska.

March 2, 1990.

Jim Kentch, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and SAVELL, Superior Court Judge.[*]

OPINION

COATS, Judge.

Ronald J. LaVigne was indicted for theft in the first degree and unlawful possession of equipment with a defaced serial number. AS 11.46.100; AS 11.46.270(a). Superior Court Judge Beverly W. Cutler conducted a jury trial on these charges in January 1987. Following the state's case-in-chief, LaVigne presented several witnesses on his own behalf. However, LaVigne did not testify. The jury found LaVigne guilty of both charges.

LaVigne obtained another attorney and filed a motion requesting a new trial. LaVigne contended that he had been denied the right to testify at his trial and that his trial attorney had been ineffective. Judge Cutler conducted an evidentiary hearing on the motion. LaVigne and his trial counsel were the only witnesses who testified. At the hearing LaVigne stated that he would have testified at his trial. However, he did not present any evidence concerning what he would have said had he taken the stand.

Judge Cutler concluded that the decision to testify at trial belongs to the defendant, not to the lawyer. Judge Cutler found that LaVigne's trial counsel had made the decision that LaVigne would not testify and that LaVigne had been unaware that he had a right to testify. Judge Cutler rea-

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

soned that, although the state had a strong case against LaVigne, it was impossible to say that LaVigne's potential testimony would not have influenced the jury's verdict. Accordingly, she granted LaVigne's motion for a new trial.

The state filed a motion for reconsideration. The state pointed out that LaVigne had not offered any evidence concerning what he would have said had he testified at trial. The state contended that LaVigne's new trial motion was essentially a claim that his counsel had acted incompetently in failing to inform him that he had a right to decide for himself whether he should testify. The state argued that in order to obtain relief on ineffective assistance of counsel grounds, LaVigne was required not only to show that his counsel had acted incompetently, but also "that the lack of competency contributed to the conviction." *Risher v. State,* 523 P.2d 421, 425 (Alaska 1974). Judge Cutler granted the state's motion for reconsideration but offered La-Vigne an opportunity to present evidence concerning the nature of the testimony which he would have given at his trial. LaVigne, with the advice of counsel, refused to provide any further evidence, indicating that to give further evidence would violate his right against self-incrimination. Judge Cutler ultimately denied LaVigne's motion for a new trial following reconsideration. Judge Cutler concluded that La-Vigne had not established that his counsel's failure to make LaVigne aware of his right to testify had contributed to his conviction. LaVigne now appeals this decision to this court. We affirm.

The state does not dispute that a defendant has a constitutional right to testify and that the decision to exercise this right belongs to the defendant, not to his lawyer.[1] The state also concedes that Judge Cutler did not err in concluding that La-

Vigne's trial counsel did not give him a choice of whether to testify. However, the state argues that LaVigne was required to make some minimal showing that he was prejudiced by his failure to testify.

LaVigne argues that the record shows that he was deprived of his right to testify in his own defense and contends that the denial of this right is reversible error *per se.* He points out that there are many constitutional rights which, if violated, mandate reversal without any showing that the defendant was prejudiced. For instance, no matter how overwhelming the evidence against the accused, the accused is entitled to be represented by counsel, whether or not he can afford representation, and is entitled to have his guilt determined by an impartial jury. *See Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3016, 92 L.Ed.2d 460 (1986); *Gideon v. Wainwright,* 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963). He points out that a defendant is entitled to represent himself at trial even though self-representation usually increases the possibility of conviction. *Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562 (1975). A conviction cannot stand where a defendant has been forced to accept representation against his express will. *Id.* at 836, 95 S.Ct. at 2541.

We have examined several cases which address the issues raised when a defendant claims in a post-conviction relief proceeding that he did not personally waive his right to testify at trial. We have found that these cases take several different approaches.

According to *United States v. Martinez,* 883 F.2d 750, 752 (9th Cir.1989), the leading case in this area is *Wright v. Estelle,* 572 F.2d 1071 (5th Cir.1978) (en banc), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). In *Wright,* the plurali-

---

1. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal....") (citations omitted); *Hughes v. State,* 513 P.2d 1115, 1119 (Alaska 1973) ("No defendant requesting to testify should be deprived of

exercising that right and conveying his version of the facts to the court or jury, regardless of competent counsel's advice to the contrary."); I *ABA Standards for Criminal Justice* § 4–5.2(a)(iii) (Approved Draft 1979). *See also Rock v. Arkansas,* 483 U.S. 44, 49–53, 107 S.Ct. 2704, 2706–2707, 97 L.Ed.2d 37 (1987) (discussing constitutional bases of right to testify).

ty adopted the panel opinion as published in *Wright v. Estelle*, 549 F.2d 971 (5th Cir. 1977). The panel concluded that it was not necessary to resolve the question of whether a defendant had a fundamental right to testify in his own behalf which only he could waive. The court concluded that even if the defendant had such a right, his failure to testify was harmless error beyond a reasonable doubt under the facts of that case. 549 F.2d at 974. However, in a concurring opinion, four judges concluded that the decision whether to have the defendant testify is properly allocated to the defendant's attorney, and not to the defendant. *Wright*, 572 F.2d at 1073. This view was rejected by the Alaska Supreme Court in *Hughes v. State*, 513 P.2d 1115, 1119 (Alaska 1973).

Three judges dissented in *Wright*, adopting a position similar to that of LaVigne. The dissenting judges concluded that the right to testify was a fundamental right which could only be waived by the defendant. 572 F.2d at 1074–75. They concluded that if the defendant's right to testify had been infringed, the harmless error rule would not apply. *Id.* at 1081. The dissenting judges argued that attempting to ascertain the probable impact of a defendant's testimony would be pure speculation. *Id.* at 1082.

In *State v. Rosillo*, 281 N.W.2d 877, 878 (Minn.1979), the court held that under the United States and Minnesota constitutions the right to testify in one's own defense was a personal right which counsel did not have the ultimate authority to waive. In that case, the court held that the defendant's attorney had not barred him from testifying but had simply advised him against testifying. The court concluded that the defendant had waived his right to testify and denied the order granting postconviction relief. *Id.* at 879. However, the court, in *dicta*, addressed the harmless error issue raised in *Wright*. The court stated that "the right to testify is such a basic and personal right that its infraction should not be treated as harmless error." *Rosillo*, 281 N.W.2d at 878 (footnote omitted).

The court in *Martinez* took a different approach. The majority agreed that the right to testify was a fundamental and personal constitutional right and that this right could only be relinquished by the defendant. The court indicated that a defendant could only relinquish such a right knowingly and intentionally. 883 F.2d at 756. However, the court reasoned that it was generally inappropriate for a trial judge to inquire whether a defendant knowingly and intelligently waived the right not to testify. *Id.* at 757. The court concluded that the decision to testify was for the defendant after consultation with his attorney. The majority pointed out that there was a danger of the trial court interfering with the attorney-client relationship if it attempted to make a record that the defendant was fully aware of his right to testify. *Id.* The court decided that all Martinez had to know to waive his right to testify was that the state could not bar him from being a witness. The court then concluded that Martinez had waived his right to testify by following his lawyer's advice to not testify. *Id.* at 761. A strong dissent concluded that Martinez did not knowingly and intelligently waive his right to testify. *Id.* at 764.

*People v. Curtis*, 681 P.2d 504 (Colo. 1984) also found that the right to testify was a fundamental and personal right which could be waived only by the criminal defendant. *Id.* at 512–13. The Colorado court went further, requiring trial judges to establish, on the record, that a defendant understands his right to testify. *Id.* at 514–15. This requirement of an on-the-record waiver was to be applied prospectively. *Id.* at 515–16.

The cases which we have reviewed clearly lack uniformity in the treatment of the defendant's right to testify. Although the majority of the cases recognize that the defendant has a right to testify, most seem to readily find a waiver by the defendant. Generally, courts seem reluctant to require the trial judge to determine on the record whether the defendant understands his right to testify and whether that right has been knowingly and intelligently waived. Only a few jurisdictions have decided that

the best way to protect the defendant's right to testify is to require an on-the-record waiver. *Curtis,* 681 P.2d at 514–15; *Culberson v. State,* 412 So.2d 1184, 1186–87 (Miss.1982); *State v. Neuman,* 371 S.E.2d 77, 81–82 (W.Va.1988). In *Martinez,* the Ninth Circuit concluded that requiring the trial judge to establish on the record that the defendant knowingly waived his right to testify would constitute unwise interference with the attorney-client relationship. 883 F.2d at 760. However, if the trial court does not establish on the record that the defendant understands and knowingly waives his right to testify, it is difficult to establish at the post-conviction relief hearing whether such a waiver occurred. *Curtis,* 681 P.2d at 511–12. The courts appear to be reluctant to credit a defendant's assertion that he did not waive his right to testify.

It appears to us that the only clear way to establish whether the defendant is waiving his right to testify is to require trial judges to establish on the record that the defendant understands his right to testify and is waiving that right. However, there is substantial authority which concludes that requiring an on-the-record waiver from the defendant would unduly burden the relationship between the client and the attorney. *See Martinez,* 883 F.2d at 760 (collecting cases). This issue has not been briefed or argued in this case, and, consequently, we are not inclined to resolve it. Perhaps this is an issue which could benefit from attention by the Criminal Rules Committee. However, the case at bar and the cases which we have consulted in our attempt to resolve this issue point out a serious problem: if the court does not establish on the record that the defendant has waived his right to testify, it is extremely difficult to determine at a post-conviction relief hearing whether such a waiver occurred. This leaves open the possibility of numerous claims for post-conviction relief on this ground.

It seems sensible to require the defendant to make at least a minimal showing as to the nature of his testimony. We tend to agree with the statements which Judge Cutler made when originally granting LaVigne's new trial motion: if the defendant has been deprived of his right to testify, it is difficult to assess what impact his testimony might have had on the ultimate outcome of the trial. This view is echoed by the judges who contend that if the defendant has been deprived of his right to testify, there can be no harmless error. However, we also agree with Judge Cutler's ultimate conclusion that LaVigne had a duty to show that he had relevant testimony to give. After all, Judge Cutler concluded that the evidence against LaVigne was strong and the jury found LaVigne guilty beyond a reasonable doubt. Furthermore, no one disputes that LaVigne's attorney had substantial reasons for not putting him on the stand at trial. On this record, for all we know, LaVigne's testimony might have constituted a complete confession, or only have been relevant for a pretrial matter such as a suppression motion. *See, e.g., Suiter v. State,* 785 P.2d 28, 31–32 (Alaska App.1989). We therefore conclude that LaVigne was required to provide evidence as to the nature of the testimony which he would have given had he testified at trial. We accordingly AFFIRM Judge Cutler's decision denying LaVigne's motion for a new trial.

BRYNER, C.J., not participating.