SHIRLEY S. ABRAHAMSON, C.J.
¶ 61. (dissenting). The record is clear in the instant case that the defendant wanted to testify. Although the right to testify is personal to the defendant and belongs exclusively to the defendant, the defendant both personally and through counsel (who advised the defendant against testifying) unequivocally asserted that she wanted to testify.
¶ 62. By prohibiting the defendant from getting on the stand and testifying on her own behalf, the circuit court denied the defendant the right to decide *752 whether to testify, a decision that was hers alone to make. Jones v. Barnes, 463 U.S. 745, 751 (1983).
¶ 63. The majority opinion assumes that the circuit court erred when it refused to allow the defendant to tell her side of the story.[1] The concurrence concludes that the circuit court did not err in precluding the defendant from testifying.[2]
¶ 64. I would hold that the circuit court erred.
¶ 65. The majority opinion asserts the assumed error is subject to harmless-error analysis.[3] Many courts have held that the denial of a criminal defendant's right to testify is subject to harmless-error analysis.[4] Other courts, however, refuse to follow this principle and instead hold that the denial of the right to testify is not subject to harmless-error analysis.[5]
¶ 66. Whether an error is subject to harmless-error analysis is a question of law this court decides independently of the circuit court or court of appeals, benefiting from their analyses.[6]
¶ 67. I would hold that the error is not subject to harmless-error analysis.
*753 ¶ 68. A defendant has a fundamental right to testify. The United States Supreme Court has declared that the United States Constitution guarantees criminal defendants the right to testify locating the right in the Fifth, Sixth, and Fourteenth Amendments of the Constitution.[7] The right to testify is embedded in the Sixth Amendment right to present a defense and to self-representation.[8] The right to testify is one of the rights that "are essential to due process of law in a fair adversary process."[9]
¶ 69. The Wisconsin Constitution explicitly states that criminal defendants "shall enjoy the right to be heard."[10]
¶ 70. The question before the court in the instant case is whether a defendant's fundamental constitutional right to testify is so fundamental to a fair trial that its infraction cannot be treated as harmless error. A limited class of fundamental constitutional errors exists that defies harmless-error analysis. The labels "structural error" and "non-structural error" have been *754 assigned to constitutional errors. If the error is labeled "structural," then the harmless error analysis is not applied; reversal is automatic. These errors are "so intrinsically harmful as to require automatic reversal.. . without regard to their effect on [a trial's] outcome."[11] If the error is labeled "non-structural," then the harmless-error analysis is applied.
¶ 71. Most constitutional errors are labeled nonstructural. The United States Supreme Court has, however, enumerated several fundamental rights the denial of which is prejudicial per se and not subject to harmless-error analysis, including the right of self-representation,[12] the right to counsel,[13] and the right to an impartial judge.[14] The United States Supreme Court has not ruled on whether harmless-error analysis applies to denial of a defendant's right to testify.[15]
*755 ¶ 72. I conclude that the defendant's right to testify falls within this category of fundamental rights not subject to harmless-error analysis. I reach this conclusion for several reasons.
¶ 73. First, the right to testify is meaningless if the defendant is not allowed to actually testify. Taking the stand is a defendant's opportunity to face his or her accusers, to tell his or her story, and to attempt to persuade those who will make a decision that will have a profound effect on his or her life and liberty. A defendant's opportunity to conduct his or her own defense by calling witnesses is incomplete if the defendant may not present himself or herself as a witness.[16]
¶ 74. "[T]he most important witness for the defense in many criminal cases is the defendant."[17] "[T]he right to speak for oneself entails more than the opportunity to add one's voice to a cacophony of others."[18] Barring a criminal defendant from testifying is not comparable to excluding a witness's testimony or particular evidence to which harmless-error analysis applies. The defendant is a very special witness. "[T]here [i]s no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case."[19]
¶ 75. Second, the right to testify is intertwined and connected with the right of self-representation. Denial of the right of self-representation is not subject to harmless-error analysis. In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court vacated the conviction of a defendant who was not *756 permitted to appear pro se. The Court did not analyze whether the defendant would have fared better with or without appointed counsel.
¶ 76. The right of a defendant to testify, according to Rock v. Arkansas, 483 U.S. 44, 52 (1987), is "[e]ven more fundamental to a personal defense than the right of self-representation."
¶ 77. If a defendant's right to testify is even more fundamental than the defendant's right of self-representation and the right of self-representation is not subject to harmless-error analysis, it seems to follow that denial of the right to testify is not subject to harmless-error analysis.
¶ 78. Third, the error in the present case of barring the defendant from testifying falls within the various formulations of an error not subject to harmless-error analysis. The test for determining whether a fundamental error is subject to harmless-error analysis is expressed in the case law in the following variety of ways. An error is not subject to harmless-error analysis if:
• The error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."[20]
• The error "infect[s] the entire trial process,"[21] and renders the entire trial "fundamentally unfair."[22]
• The error deprives a defendant of "basic protections" without which "a criminal trial cannot reliably serve *757 its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair."[23]
• The error seriously affects "the fairness, integrity or public reputation of judicial proceedings and [is] so fundamental that [it is] considered per se prejudicial."[24]
• The error is "so basic to a fair trial" that it "can never be treated as harmless error."[25]
• The error undermines a right founded on the respect for free choice and the human dignity of the individual.[26]
• The error undermines the concept of each person being ultimately responsible for choosing his or her own fate.[27]
• The error produces consequences that are unquantifiable, indeterminate, and unmeasurable.[28]
¶ 79. The denial of the right to testify fits within each of these descriptions of an error to which harmless-error analysis does not apply. The error in the *758 present case defies harmless-error review. It is too difficult to determine the effect of a defendant's taking or not taking the stand on the trial's outcome.
¶ 80. Before I conclude, let me address two additional points raised in the majority opinion and concurrence.
¶ 81. First, I agree with the concurrence that the circuit court was in a difficult position, caught between protecting the defendant's two rights — the right to testify and the right not to testify.[29]
¶ 82. The circuit court obviously thought it ill-advised for the defendant to testify. The concurrence agrees. That the defendant may be ill-advised or unwise to testify is not the legal standard for determining whether the circuit court erred in barring the defendant from testifying. A court cannot substitute its judgment for the defendant's.[30] The defendant must have the right
as he suffers whatever consequences there may be — to the knowledge that it was the claim that he put forward that was considered and rejected, and to the knowledge that in our free society, devoted to the ideal of individual worth, he was not deprived of his free will to make his own choice, in his hour of trial, to handle his own case.
United States v. Dougherty, 473 F.2d 1113, 1128 (D.C. Cir. 1972).
¶ 83. Second, the relevance of the defendant's testimony does not dictate a court's decision to bar the *759 defendant from taking the stand to testify. The majority opinion speculates that the information the defendant desired to present in her testimony was irrelevant.[31] The circuit court concluded that the defendant's testimony was irrelevant to the issue of guilt or innocence. The concurrence agrees.[32]
¶ 84. Relevance, or lack thereof, may be the basis for objecting to a defendant's testimony and for sustaining objections to the defendant's testimony once the defendant takes the stand. The accused's right to testify is not unqualified and " 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . .'" Rock, 483 U.S. at 55 (quoted source omitted). But a court should not use the relevance of a defendant's testimony to justify barring the defendant from taking the stand at all. We cannot know whether her testimony is relevant before she testifies.
¶ 85. In the instant case, the defendant's testimony may well have been relevant. As the majority opinion acknowledges, if the defendant's testimony asserts that "it was the defendant who did not consent to the intercourse, that it was she who was raped by the child, then the issue of her consent becomes paramount." Majority op., ¶ 49 n.14 (quoting State v. Lackershire, 2007 WI 74, ¶ 29, 301 Wis. 2d 418, 734 N.W.2d 23). Because the defendant was prohibited from testifying, the jury was prevented from evaluating her version of the events and whether her cognitive and intellectual limitations played a role in her ability to consent.
¶ 86. For the reasons set forth, I conclude that the circuit court erred in depriving the defendant of the *760 right to testify under the circumstances of the present case and the error cannot be subject to harmless-error analysis. The defendant in the instant case is entitled to reversal of the conviction.
¶ 87. For the foregoing reasons, I dissent.
¶ 88. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 Majority op., ¶ 27.

 Concurrence, ¶ 55-56.

 Majority op., ¶ 5.

 Majority op., ¶ 35.

 See, e.g., State v. Rivera, 741 S.E.2d 694, 706 (S.C. 2013) ("[A] trial court's improper refusal to permit a defendant to testify ... is not amenable to harmless-error analysis."); State v. Dauzart, 769 So. 2d 1206, 1210 (La. 2000) ("[Dlenial of the accused's right to testify is not amenable to harmless-error analysis."); State v. Rosillo, 281 N.W.2d 877, 879 (Minn. 1979) ("[T]he right to testify is such a basic and personal right that its infraction should not be treated as harmless error.").

 State v. Travis, 2013 WI 38, ¶ 9 & n.9, 347 Wis. 2d 142, 832 N.W.2d 491.

 "The opportunity to testify is ... a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock v. Arkansas, 483 U.S. 44, 52 (1987). The Sixth Amendment's Compulsory Process Clause guarantees a criminal defendant "the right to call witnesses in his [or her] favor." Id. (internal quotation marks omitted). The Fourteenth Amendment assures defendants the "right to be heard and to offer testimony" as a part of due process. Id. at 51.
See also State v. Albright, 96 Wis. 2d 122, 128, 291 N.W.2d 487 (1980).

 Rock, 483 U.S. at 51.

 Id.

 Wis. Const. art. I, § 7. See State v. Denson, 2011 WI 70, ¶¶ 49-56, 335 Wis. 2d 681, 799 N.W.2d 831 (noting the protections provided by both the Wisconsin and federal constitutions for the right to testify and its corollary, the right not to testify).

 See Neder v. United States, 527 U.S. 1, 7 (1999).

 McKaskle v. Wiggins, 465 U.S. 168, 177-78 & n.8 (1984).

 Gideon v. Wainwright, 372 U.S. 335, 343 (1963).

 Tumey v. Ohio, 273 U.S. 510, 535 (1927).

 Although one Wisconsin court of appeals case asserts that the United States Supreme Court has determined that harmless-error analysis applies to the deprivation of the right to testify, see State v. Flynn, 190 Wis. 2d 31, 56, 527 N.W.2d 343 (Ct. App. 1994), the Flynn case cited Crane v. Kentucky, 476 U.S. 683 (1986), for this proposition. Crane did not assert that harmless-error analysis applied. Rather, in Crane, the parties agreed that harmless-error analysis applied and the Court did not reach the issue. Also, the case involved the prosecutor's foreclosing the defendant's efforts to admit testimony on the environment in which police secured his confession, rather than foreclosing the defendant's testimony in its entirety.
In addition, the Flynn case itself can be distinguished because Flynn concerned an ineffective assistance of counsel claim, which has a different standard for determining prejudice than a harmless-error analysis.

 Rock, 483 U.S. at 52.

 Id.

 McKaskle, 465 U.S. at 177.

 Ferguson v. Georgia, 365 U.S. 570, 582 (1961) (emphasis added). See also Rock, 483 U.S. at 50 (quoting Ferguson).

 Arizona v. Fulminante, 499 U.S. 279, 310 (1991).

 Brecht v. Abrahamson, 507 U.S. 619, 630 (1993).

 Neder v. United States, 527 U.S. 1, 8 (1999) (citing Rose v. Clark, 478 U.S. 570, 577 (1986) (internal quotation marks and citation omitted); Fulminante, 499 U.S. at 309-310. See also State v. Ford, 2007 WI 138, ¶ 42, 306 Wis. 2d 1, 742 N.W.2d 61 (citing Neder).

 Rose v. Clark, 478 U.S. 570, 577-78 (1986) (citation omitted).

 State v. Ford, 2007 WI 138, ¶ 42, 306 Wis. 2d 1, 742 N.W.2d 61 (quoting Shirley E., 2006 WI 129, ¶ 62, 298 Wis. 2d 1, 724 N.W.2d 623).

 Chapman v. California, 386 U.S. 18, 23 (1967).

 The decision "must be honored out of.. . respect for the individual which is the lifeblood of the law." Faretta v. California, 422 U.S. 806, 834 (1975) (quoting Illlinois v. Allen, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring) (internal quotation marks omitted)). See also Chapman v. United States, 553 F.2d 886, 891 (5th Cir. 1977).

 See Chapman v. United States, 553 F.2d 886, 891 (5th Cir. 1977).

 Neder, 527 U.S. at 11; Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993).

 A limited colloquy is advised when a defendant elects to testify. Denson, 335 Wis. 2d 681, ¶ 63.

 See Faretta, 422 U.S. at 835-36 (asserting that a court's assessment of a defendant's legal acumen is irrelevant to its evaluation of a defendant's decision to self-represent).

 Majority op., ¶ 50.

 Concurrence, ¶¶ 55-56.